Good morning, Your Honors. I'd ask to reserve three minutes. The judge in this case ordered- Could we get your name for the record, please? Sorry? Oh, Doug Beavers. Thank you. From Federal Defenders on behalf of Mr. Espinoza-Baza. The judge in this case ordered the defense not to put up any defense whatsoever to the government's evidence of the elements of the crime. The government's brief argues that you should uphold the case under Homeless v. South Carolina, which it says allows judges to exclude marginally relevant evidence under Rule 403. But this case involved all of the defense's central evidence. In Holmes, the Supreme Court actually held there were constitutional limits on rules excluding evidence because the Constitution guarantees criminal defendants, quote, a meaningful opportunity to present a complete defense. Mr. Beavers, as I understand the judge's rationale, your evidence would not have proven the defense. Well, that assumes that the defense, that the defendant has the burden to prove the defense. The government has argued that, but that's not what the judge held. I mean, you just can't put on any, you know, stuff just to muddy the water. You've got to have some relevance to it. And the judge says if you take everything you were going to prove, it doesn't establish derivative citizenship. Well, Your Honor, the evidence, the derivative citizenship is part of the government's element of alienage. And the government sought to prove this. The government introduced evidence on derivative citizenship. As shown in the government's exhibits, page 10 of the government's exhibits, the government introduced the defendant's jailhouse confession that he was born in Mexico and his parents were born in Mexico, which was relevant to prove and would ordinarily be enough to prove he's not a derivative citizen. They brought up the issue of derivative citizen in their evidence. It's part of their case. It's part of the definition. Unfortunately for the government, that evidence was contradicted by its other witness, Agent Cruz, who testified that the defendant's other jailhouse confession, he said his mother was a citizen. Said he was a citizen? He did. In my excerpts 55 and 68, the agent said that Mr. Espinoza had said that his mother was a citizen, and that's why the agent wrote it down on the form. No, no, no. All you had there was the defendant said that he was born in Mexico, and the agent asked about the mother, and he didn't know. So the agent put down U.S. citizen question mark. That's all you have. Well, no, Your Honor, because that's what how it happened was the agent first said that he wrote down what the defendant said, and the defendant said he was a citizen, or his mother was a citizen. He said his mother was a citizen. Said his mother was a citizen? Yes, Your Honor. He said that, and then the agent changed his story on redirect. The agent, when pressed, the government, at the record 75, the government was pressing the agent asking him why Mr. Espinoza Baza would have said his mother was a citizen. Maybe he was lying. Don't people lie? He's presenting an insinuation that the defendant is presenting a false claim of derivative citizenship. However, when the agent was pressed on that, finally, the agent backed off and then changed his story and then said, well, actually, he said he wasn't a citizen. But the jury is not required to believe all of the agent's testimony. The agent gave several separate stories, and the jury would be entitled to believe the agent's first story, which was Mr. Espinoza Baza said his mother was a citizen. And in that case, the jury doesn't have to believe a person's second story instead of their first story. If there's any foundation in the record, the jury should be instructed on this. Furthermore, there would be more evidence that we sought to put in, which was that to corroborate that statement would be the family history of the defendant's mother, showing that her mother, his mother's father was a U.S. citizen. It's all family history evidence. The government's evidence was only family history evidence, no documents to prove anything, just the defendant's different family history. Well, the aunts were very vague. She was here sometime. You think the aunts should have been allowed to testify today? Yes, and the government could have cross-examined them about what they would have known or didn't know and why they didn't know it. But they said they didn't know how long. Right. They didn't know how long. This has to do with events happening long before these people are adults. And the question is, who has the burden of proof? If we switch the burden and make the defendant have the burden of proof, it would be much easier. But in this case, this is the government's element, the government's burden of proof. Derivative citizenship is just one aspect of the government's proof, which their own form requires agents to investigate, to ask about derivative citizenship. And they put that evidence in, and we wanted to contradict it, but we weren't allowed to do that. The weakness or strength of the defendant's evidence was for the jury. And the other insinuation, the government, the judge prevented us from cross-examining the agent Cruz about what kind of investigation he did as to the mother's residency or her citizenship. I think it would be a fair inference that if all the evidence had been allowed in, that a person, if the jury believed the mother was a citizen and believed that the grandfather was a citizen, and there was evidence on those two points, and that the great-grandfather lived in the United States, that's a lot of evidence to show that she has U.S. contacts. There's nothing on the duration of their time here, which is critical. Except the burden of proof, that the government has to prove that it didn't happen because it's part of their evidence. That's the way Congress wrote the statute. They put the burden of proof.  I mean, the government has to prove a negative?  They have to prove it. Kennedy. How would they prove that she was never in the United States 10 years, 14 years, five years of which must be after she was 14? How would the government prove that? Well, they admit in their brief that they have her immigration file. That's they have that evidence, but they didn't choose to put it in. Now, are you saying that they've hidden evidence from you and they wouldn't provide you evidence that you asked for? Is this a Brady? It's somewhat vague. Their file was somewhat vague. They didn't put it in. But we can't reverse cases based upon that. There has to be some indication of a demand for it and that they were guilty of failing to provide evidence to you. Where is that in the record?  We believe they don't have the evidence because it's unknown. But Congress wrote the statute putting the burden of proving a negative. The government has to prove a person's not a citizen. Okay. So they prove that she's not a citizen in a sense that everybody's saying that she isn't. And then you say she's got derivative citizenship because of grandfather. And there's good evidence that grandfather was there. People don't go to censuses if they're trying to escape the law and their illegality in the country. But there's a big jump between grandfather and her. And my question is, where is the evidence that we could rely upon that she was here for 10 years in the country and that five of those years were after she was age 14? Where is any evidence of that, which is a requirement of derivative citizenship? It's a requirement if we want to prove it. Yes. But where is the evidence? Where was the offer of proof? Where was something we can lay our finger on and say, yes, you could prove that she was in the country for 10 years, five years after she was 14? We could say that. Where is it in the record? Where is the offer? Where is it? Well, the only thing is that she's a U.S. citizen, her father and grandfather are citizens, and it's an ordinary inference that people live where they're a citizen of. I thought you were trying to prove his derivative citizenship through the mother. No. We're not trying to prove it. We're just creating some doubt as to the government's proof that he's not a derivative citizen. The government tried to prove she was not a derivative citizen, and we wanted to raise some doubt as to that. A person whose mother is a U.S. citizen who might have been here, that creates some doubt as to that element, just to put on some doubt. That's all we wanted to do. And we have some cases that say it's a defense. I don't quite understand that, to when the government has the burden of proof, but we have said it's a defense. You're contending it's not a defense. This just goes to an attack of the government's burden of proof of noncitizenship. Absolutely. And if you look at Patterson v. New York, it defines exactly what our element – what factors are elements versus what are – that the government has to prove beyond a reasonable doubt. It's anything that's part of the definition of the crime. Preserve 30 seconds. Thank you. May it please the Court. My name is Ian Garrickson. I represent the government in this case. Good morning. The government has three – two main points for Your Honors this morning. First, the district court properly excluded the defense evidence in its jury instruction. Second, defendant's sentence was correct and reasonable. As to derivative citizenship, Your Honors, we're already on the right track. As the district court held what the government argued below first, that it was not relevant, defendant's evidence, to be admissible evidence has to be relevant. Defendant's evidence was not relevant because he didn't – his evidence didn't address each of the requirements of derivative citizenship, namely that he had a parent or a grandparent who was a U.S. citizen, yet he was born outside the United States or his mother, and that that parent or grandparent had lived in the United States for 10 years prior to the child's birth, five of those years coming after age 14 for the defendant's mother and age 16 for the grandfather. The evidence was not relevant because he only had – he was only proffering evidence as to his grandfather's citizenship, that his grandfather may have been born in Texas, and his aunts couldn't say exactly how long he may have lived in Texas. It was not – and as to his mother, it was not relevant. The only potential evidence that he tries to get in through the government's agent is this vague statement that the defendant says he doesn't know if his mother's a citizen or permanent resident or what have you, but still as to his mother's and his offer of proof, he specifically states that the aunts would say that she moved to the United States sometime illegally, but they don't know when. In that case, it's even more extreme because he's not even offering any proof that she moved to the United States before he would – the defendant was born. The mother must have lived in the United States before he was born. He didn't even make that offer, much less an offer of proof as to 10 years. In both, he says his aunts don't really know the lengths as to his grandfather and as to his mother or even when. Therefore, it's not relevant. And on that basis, the court – this court can independently hold that the district court's decision was proper. Well, his argument is that he doesn't have to have all of the evidence. He just has to have inferences so that he can show that the government hasn't met their burden of proving that the person was not a citizen, the defendant was not a citizen. That's his argument. But he ought to have something to argue to the jury. The defense keeps inferring that the government and the district court was making him prove derivative citizenship. All the district court was asking for was an offer of proof. And the district court specifically said it doesn't need to be credible. It doesn't need to carry much weight. We're not looking at that. You just have to get in, like, a little piece to address that point. Otherwise, as a matter of law, you can't – there's no issue as to derivative citizenship. And he keeps saying that – the defense keeps saying that the district court somehow can't apply Rule 403, balancing in this situation when this court has clearly held that derivative citizenship is a defense, has characterized it that way in many cases. In contrast to an affirmative defense, which is a little bit different, where the defendant is not attacking a specific element of the defense, basically conceding the elements, but saying, okay, I did it, but there's another reason why I should not be held guilty. In any case, it's not relevant, and all he had to do was throw in some evidence or have his – if his aunt had maybe said, oh, and the grandfather lived in Texas from 1910 to 1920, and that was all before the mother was born, and five of those years were going to come after, and then the mother, too. But he didn't do that. Well, he's not trying to prove it. What he's trying to do is to get enough evidence to show the government hasn't met the burden of proof. Then he wants somebody to argue to the jury that there – that it's not beyond a reasonable doubt proof the government has offered of noncitizenship. That's all he wanted. But the government has, as Your Honor noted, the government can't disprove a negative. And the element of the offense is that the defendant is not a natural born or naturalized citizen of the United States. We're not talking about the parent's citizenship. For the parent's citizenship to be relevant to the defendant, it's conceded that defendant and his mother were both born outside the United States. That's conceded. So the only way that derivative citizenship could pass from the mother or the grandfather is through the residence. Well, I'm not sure it's conceded. He indicates that there's an issue that the government agent at first said she was a citizen of the United States and then backed off under further examination. What I was indicating is that there was evidence from the other agent that the defendant said – in a prior case, there were two confessions. In the first confession, the first agent says on the stand, defendant admitted that his parents were born in Mexico. Who knows? I mean, if going with defendant's case, you could say she may be naturalized or something. But the point is, we're not saying he has to prove it, and the Court didn't say that. He just has to put it at issue. So as to Rule 402, the relevance argument, it's not relevant because there's no evidence at all addressing the residency durations as to his grandfather and as to his mother. Even excepting – even excepting – The timing is a problem. There's no question about that. But there is sort of a confusion in the record as to whether she was a citizen or not by statements that were made on the stand. Even excepting – The government agents. Even excepting that, what happened was, yes, the defense asked him what he said. There was an annotation, USC. The defense asked, what did he say? And ultimately, the testimony was that the defendant didn't know, so the agent marked USC, but the agent said – I mean, the defendant said he didn't know if she was a U.S. citizen or permanent resident or something else. And the agent put on the official form, U.S. citizen, question mark. Question mark. In any case, even accepting the truth of all of the defendant's evidence, and that's what we're looking at, except that it's true, it doesn't matter. He was born outside the United States. That's not at issue. There is no issue that he was – the defendant was born outside the United States. For his mother to pass citizenship through the derivative citizenship statutes, she must have lived in the United States 10 years prior to her age 16, five of those years occurring – no, 10 years prior to his birth, five of those years occurring after her age 14. It doesn't matter that – even if she were a citizen, the point is that she – the testimony is and the evidence that he was born outside the United States. To gain citizenship or to have it pass, there has to be a showing or some evidence that she actually lived in the United States. And here is only proffer – the only evidence on that issue was – and he was going to proffer – is that his aunts would say that his mother moved to the United States at some point illegally, but they didn't know when. So you have two issues there. They didn't know when. First, we don't – he's not even saying that his evidence would proffer any point that she lived in the U.S. before he was born. The parent has to live in the U.S. before the child is born outside in Mexico for that citizenship to pass. What about this note that came from the jury? Out of the blue, they're asking about derivative citizenship. Had that come up during the trial before the jury? Was something said to the jury? It had. Defense – the first – it's not in – the issue first came into the record on defense opening argument, where the defendant and government made its opening argument. The defendant made his opening argument, saying he was going to prove or at least put at issue derivative citizenship, that his grandfather and mother came in there. That's when the government began arguing orally for a motion in limine to preclude that line of argument until – or questioning until there's some threshold showing, you know, that it's relevant. And the court held its ruling in abeyance basically until the government's case was to recall any government witnesses to ask about any agents about derivative citizenship if the court were to rule in defendant's favor. The court did not rule in defendant's favor. During the government's case, when it had Agent Cruz on the stand and defendant had him on cross-examination asking about this form, bringing it in, which was a hearsay statement from defendant, that's when – and then the defense asked the agent about did you investigate about dual citizenship. And this is all in the record. It's in the transcript. And the government objected, and the court sustained the government's objection because that line of questioning had been precluded until the court was going to rule. Ultimately, the court did rule, and that's why. The seed got to the jury. They sent a letter. They got shoehorned in. But with that, the government would submit that the conviction sentence should be affirmed. Thank you, Your Honor. Thank you very much, sir. Mr. Beavers, you get the last word. You've got about 30 seconds, I think. Thank you. Just defendant's excerpts, page 55, shows the form. The agent filled out didn't say U.S. citizen, question mark. It was just U.S. citizen, no question mark. His first testimony was no question mark. The jury response, the jury question, it is also there was evidence of derivative citizenship in the record. Many people do know such a concept exists, and they were entitled to ask about it. It was part of the government's case, and the judge just got it wrong. How would you approve the 10 years? We don't have to. Just by the family history showed that she has a connection to the United States. Most people want to live in the United States. Ten million illegal alien Mexicans want to live in the United States. The economy is different. It's a fair inference that these people who were actually U.S. citizens would be in the United States. The family said she came illegally, so she was crossing the border without anything, shows that it's likely that she would have been here. It's fair inferences that people live where they're a citizen and where their father's a citizen and their grandfather's a legal resident of. Thank you very much. Thank you, too, counsel. The case just argued is submitted. Good morning, gentlemen.
judges: Wallace, Noonan, Silverman, Cjj